GEORGE HALL, Appellant, *v.* NANCY HOWDESHELL *et al.*, Respondents.

*Will—Devise—Trust.*—A testator by his will, 1, bequeathed to his daughter A. a slave at a fixed valuation; 2, declared that his children should take equal shares in the whole of his estate, the special legacies to them to be taken at the valuations affixed as part of the estate; 3, that the portion of his estate which should fall to his daughter A. should be placed in the hands of H. for her special use and benefit, he consenting to act as guardian. A. subsequently married, and the testator, by a codicil to his will, directed that the portion of the estate devised to A., if she died before her husband, should be equally divided between her sisters and brother; that the slave should be sold and the proceeds placed in the hands of H. for the benefit of

A., and that A. should receive the interest of her portion of the estate, to be paid to her annually by the said H., or his legal representatives. *Held*, that, to effectuate the intention of the testator, it was necessary that H. should be clothed with the legal title, and that he took A's share as her trustee. (See Beaupied v. Jennings, 28 Mo. 254.)

## Appeal from St. Louis Land Court.

**B. A. Hill,** for appellant.

I. The court erred in holding that the words of the will and codicil did not create a trust in favor of Ann Howdeshell and appoint George Hall the trustee. It is declared by every writer on devises, wills, or trusts, that no particular form of words is necessary to create a trust by will. (Hill on Trustees, p. 65 ; Prest. on Est. 191 ; Pow. on Dev. 13 ; 1 Jarm. on Wills, 333–4, and cases cited ; 2 Black. Com. 381 *et seq.;* 4 Kent's Com. 534–5.)

There is no case reported wherein such words have not been held to create a trust. The intent is clear, and effect must be given to the devise according to the intent of the testator. (1 Jarm. on Wills, 334–5 ; 2 Black. Com. 381.)

II. The intent of the will is that George Hall shall take the legal estate, in all the real and personal estate devised to Ann, for her especial use and benefit. The words " especial use and benefit," as applied to the estate of an unmarried daughter, would imply a design to prevent any future husband of Ann from using it. It is to be kept for her especial use, and to be placed in the hands of George Hall for that purpose. The object was undoubtedly to secure her property against the marital rights of any future husband.

III. This will was made the 27th day of October, 1849. After the making of the will Ann married one Beaupied, and the codicil was made 31st December, 1852, to provide against the estate of Ann ever becoming vested in Beaupied, her husband. It is expressly limited by this codicil to Ann for life, if she die before her husband, with remainder to her sisters and brother, in equal parts, in that event. If Ann survive her husband, the trust would be executed in her and her heirs.

IV. During the marriage of Ann the trust remains active, and Ann is to receive the interest on her share of the estate annually, and for her especial use, from George Hall, the trustee, or his legal representatives. The trust is to remain active until Ann's death, and George Hall must hold the legal estate in trust for Ann's especial use until that event. (1 Prest. on Est. 186-7; Hill on Trust. 328-458, last ed., and 332-463.)

The question as to whether George Hall was trustee of Ann Beaupied was before this court in Beaupied v. Jennings, 28 Mo. 254.

*a.* Hall is the trustee for Ann's separate use, and entitled to receive the proceeds of the sale of the real estate, and bound to invest it at interest, and pay over the proceeds annually to Ann for her own especial use.

*b.* The trust is active, because the trustee is bound to pay over annual interest, which he must collect.

As the whole property is limited to the especial use of Ann by the will, this excludes all marital rights of Beaupied, her husband. (Hartley v. Hurle, 5 Ves., jr., 540; 18 Ves., jr., 434; Dixon v. Olanius, 2 Cox, 414; Tyrell v. Pope, 2 Atk. 561; Lee v. Prideaux, 3 Brown Chy. 381.)

V. As to Hall's power to receive the proceeds of the sales of Ann's share of the estate there can be no doubt. He is to pay her interest on her share thereof annually. (Smith *ex dem.* Dormer v. Parkhurst, 3 Atk. 135; Doe *d.* Leceister v. Briggs, 2 Taunt. 109; Briscoe v. Perkins, 1 Ves. & Bl. 485; Harton v. Harton, 7 J. R. 652; Robinson v. Gray, 9 East. 15; Beaupied v. Jennings, 28 Mo. 254.)

*Sharp* and *Wood,* for respondents.

BATES, Judge, delivered the opinion of the court.

John Howdeshell, in his lifetime, was seized of two tracts of land in the county of St. Louis, and had also slaves and other personal property. He executed a will dated on the 27th day of October, 1849, and a codicil thereto dated on the

31st day of December, 1852, which, after his death, were admitted to probate in St. Louis county. The will is as follows:

" 1. I give and bequeath unto my daughter Malinda Jones, wife of John Jones, my negro man named Edmund, at the valuation of four hundred dollars.

" 2. I give and bequeath unto my daughter Mary Nevin, widow of Joseph Nevin, my negro boy named Antrim, at the valuation of five hundred and fifty dollars.

" 3. I give and bequeath unto my step-daughter Sarah Jones, wife of Nathan Jones, my negro boy named Lewis, at a valuation of five hundred and fifty dollars.

" 4. I give and bequeath unto my daughter Ann, my negro girl named Eliza, at the valuation of four hundred and fifty dollars.

" 5. I give and bequeath unto my daughter Wineford Martin, wife of William Martin, my negro boy named Powell, at the valuation of three hundred and fifty dollars.

" 6. I give and bequeath unto my daughter Malinda Jones, wife of John Jones, my old negro woman named Lucy, without any valuation, as I consider her not worth more than her victuals and clothes.

" 7. It is my will that all the aforementioned negroes shall not be sold to any person who will convey them to the south.

" 8. It is my will that all my children, namely, Elizabeth Denton, Jacob Howdeshell, Wineford Martin, Mary Nevin, Malinda Jones, Ann Howdeshell, Maria Dougherty, wife of Larkin Dougherty, have an equal portion of all my estate, both real and personal; the negroes before mentioned are to be reckoned according to the valuations as before mentioned, as part and parcel of each child's portion.

" 9. It is my will that all that portion of my estate, both real and personal, which may fall to Ann from my estate, shall be placed in the hands of George Hall for her special use and benefit, who consents, at my request, to act as guardian of my daughter Ann Howdeshell."

The codicil was as follows:

" In addition to the foregoing will, I make this codicil to

the same, that is to say : It is my will and wish so to change and alter that portion of said will so as to give that portion of my estate which I have given or bequeathed unto my daughter Ann, who has since intermarried with Louis Beaupied, shall, in case she shall die before her husband, the same to be equally divided between her sisters and brother. It is further my will that the negro girl Eliza that I have bequeathed to my daughter Ann shall have the privilege to choose some person to buy her, in case she be not satisfied to live with my daughter Ann, and the proceeds of the sale of said negro girl Eliza shall go into the hands of George Hall, or his legal representatives, for the benefit of my daughter Ann. It is further my will that my daughter Ann shall receive the interest on her portion of my estate, the same to be paid to her annually by the said George Hall or his legal representatives."

The questions which arise under this will and codicil refer only to the estate bequeathed to, or for the benefit of, Ann Howdeshell, intermarried with Louis Beaupied.

At the time the will was made, Ann was a mature woman, some forty years of age ; and in the pleading of the said Ann and her husband, filed in this cause, it is stated that the provisions of the will as to said Ann were made by said testator under a mistaken belief that the defendant Ann was insane and incapable of managing her property, and that defendant Louis, her husband, was a thriftless and profligate man, not suited to have charge of her property.

George Hall, the plaintiff in this suit, and the said Ann and her husband, Louis Beaupied, conveyed the interest of said Ann in the real estate left by John Howdeshell to a purchaser, who paid a portion of the purchase money to Hall, and gave an obligation to pay the remainder to whichever party should be entitled to it.

Hall brought this suit, stating that he had undertaken to act as trustee under the provisions of the will, and claiming therefore to hold the property as a trustee for said Ann during her life, paying her the interest thereof annually, and

that said Ann and her husband claimed the property as absolutely hers; and that the brother and sisters of said Ann claimed that, at her death, if she should die before her husband, they would be entitled to the property; and prayed the court to determine whether he was entitled to receive the money, and to adjudicate the rights of the parties in the premises, and that the costs be paid out of the proceeds of the sale of the share of said Ann.

Louis and Ann Beaupied answered, claiming that the share of said Ann, bequeathed to her by her father's will, was her absolute property.

The St. Louis Land Court, before which the case was tried, decided it in favor of the defendants, Beaupied, giving the following instruction:

"The will of John Howdeshell, and the codicil thereto annexed, do not devise any part of John Howdeshell's estate, real or personal, to George Hall, the plaintiff, in trust or otherwise, for the use or benefit of Ann Howdeshell, who intermarried with Louis Beaupied; and the devise is direct to Ann Howdeshell, who intermarried as aforesaid, without any trust whatsoever to George Hall, and the said Ann is entitled to the proceeds of the said real estate sold and conveyed to Francis P. Blair, jr."

It is obvious that the will of John Howdeshell fails to express, in clear language, the intention of the testator as to his daughter Ann, and the court is in fact compelled to make the real will by a construction of the written will.

The clauses which affect the daughter Ann are, 1. A direct bequest to her of a negro girl, at a valuation fixed by the testator; 2. A declaration of the testator that all his children should have equal portions of his estate, the negroes specially devised to some of them being included in their portions; 3. That the portion which may fall to Ann shall be placed in the hands of George Hall for her special use and benefit, who consents, at the testator's request, to act as her guardian; and, 4. After the lapse of three years, and the marriage of Ann, the codicil directs that the portion which the testator

had bequeathed to Ann, shall, in case she shall die before her husband, be equally divided between her sisters and brother; that the negro girl bequeathed to Ann may be sold, and that the proceeds of the sale shall go into the hands of George Hall, or his legal representatives, for the benefit of Ann; and further, that Ann shall receive the interest on her portion of the estate, the same to be paid to her annually by the said George Hall or his legal representatives.

In adhering to the prevailing rule as to the construction of wills, that the testator's intention is to be ascertained and executed, and endeavoring to give effect to all the words of the will, it appears impossible to reject all the references to Geo. Hall. Retaining them, we are compelled to ascertain what they mean. There is no devise or bequest directly to him, but it is beyond doubt that the testator intended that Hall should manage the property for Ann, and pay her annually the interest or profits of it.

To effect this end, it is necessary that Hall should be clothed with a legal title to the property, in trust to execute the testator's intentions in favor of Ann. We therefore are of opinion that the will of John Howdeshell vested a child's share of his estate in George Hall as a trustee.

In the case of Beaupied v. Jennings, 28 Mo. 254, this court regarded him as a trustee, with power to sell the slave woman Eliza, bequeathed by the will to the testator's daughter Ann.

It is only necessary to say, as to the character and extent of the trust, that so long as the daughter Ann shall live the trustee shall pay her annually the interest or profit of the trust fund; and at her death the trustee shall pay or deliver the whole trust fund and property to her sisters and brother, or their legal representatives, if her husband (Beaupied) survive her, and if he do not survive her, then to her right heirs.

The trustee (Hall) being dead, another trustee should be appointed to receive the trust property and execute the trust, paying the costs of this case out of the trust fund.

Judgment reversed and cause remanded. Judges Bay and Dryden concur.